UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHAN CUNDIFF,

                Plaintiff,                                          CASE NO. 13-11330
                                                             HON. LAWRENCE P. ZATKOFF

v.

LENAWEE STAMPING CORPORATION,

                Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 9th day of April, 2014

PRESENT:      THE HONORABLE LAWRENCE P. ZATKOFF
                        UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment (Docket #19). The motion is fully briefed.  The Court finds that the facts and legal arguments pertinent to the motions are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments.  Therefore, pursuant to E.D. Mich. Local R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted by the parties, without this Court entertaining oral arguments.  For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

## II.  BACKGROUND

Defendant, located in Tecumseh, Michigan, is a Tier 1 supplier of metal stampings and assemblies to the automotive industry. Hourly employees of Defendant are unionized and represented by the United Automobile, Aerospace and Agricultural Implement Workers of America

(the "UAW").  Plaintiff was employed by Defendant as a short-term manufacturing worker, and he

was a member of the UAW.

Pursuant to Defendant's "call-in" procedure, manufacturing employees are required to

inform Defendant on days they are scheduled to work but, for whatever reason, will be absent and

not report to work.  The "call-in" procedure provides, in relevant part:

> Call-In Procedure
>
> Because of the Company's Just-In-Time manufacturing and delivery techniques, employees who are going to be absent … are required to call the designated Call-In Line at 517-424-0563 at least thirty (30) minutes prior to the start of his/her shift....
>
> It is not necessary for employees to call the Call-In Line if they are on vacation, an approved leave of absence, or pending FMLA [Family and Medical Leave Act, 29 U.S.C. § 2901 *et seq.*] leave that has been previously discussed with Human Resources.  Employees on intermittent FMLA leave must call the Call-In Line for each day of absence.

*Collective Bargaining Agreement by and between the UAW and Defendant* (the "Union Contract"),

Article 31 - Attendance Policy, Section 2.  The Call-In Line is recorded and that practice is known

to employees, including Plaintiff.  The Attendance Policy also provides that a worker who misses

three consecutive scheduled days of work *without* calling in or otherwise informing Defendant will

be discharged from employment:

> If the employee is absent from work for three (3) consecutive working days without informing management, the employee is terminated and all seniority lost …

Union Contract, Article 31 - Attendance Policy, Section 4-Absence Categories, Unexcused

Absences, section (h) (hereinafter, the "no-call no-show" rule).

During August 2012, Plaintiff was scheduled to work a regular 5-day work week, Monday

to Friday.  As of August 3, 2012, (1) Plaintiff was not scheduled to be on vacation, (2) he had not

2

been approved for a leave of absence, and (3) he did not have pending FMLA leave that had been previously discussed with Defendant's Human Resources personnel. Plaintiff was absent on Friday, August 3, 2012, and called Defendant's Call-In Line to report that absence. Plaintiff's August 3, 2012 call was recorded and the call-in operator asked Plaintiff if he was taking a Paid Absence Allowance ("P.A.A.") day (in essence, personal time off which may or may not be excused). Plaintiff stated that he needed "to use 8 hours of P.A.A." and that he would be back to work on Monday, August 6, 2012. Plaintiff was not asked, and he did not indicate, the reason for his absence. Plaintiff was absent again on Monday, August 6, 2012, and he again called the Call-In Line to report his absence. Plaintiff's August 6, 2012 call was also recorded, and the relevant portion of that call transpired as follows:

| | |
|---|---|
| Operator: | And . . . umm, are you taking a P.A.A. day? |
| Plaintiff: | Yes, if I can, 8 hours. |
| Operator: | Okay, well I just put yes I don't know, there's no room for any hours. And what is the reason? |
| Plaintiff: | uhhh . . . . just a P.A.A. |
| Operator: | P.A.A.? Okay, and when will you return? |
| Plaintiff: | That would be Tuesday [August 7, 2012]. |

Plaintiff was absent again each of the next three days, Tuesday, August 7, 2012, Wednesday, August 8, 2012, and Thursday, August 9, 2012, but Plaintiff did not call Defendant's Call-In Line any of those three days. Plaintiff also did not provide Defendant with any other form of notice regarding those absences until August 12, 2012.

In a letter dated August 10, 2012 (the "Termination Letter"), Defendant's Human Resource Representative informed Plaintiff that his employment with Defendant was terminated, effective

3

August 10, 2012, because Plaintiff violated Defendant's no-call no-show rule.  The Termination

Letter was delivered via certified mail.  Plaintiff signed the certified mail receipt, on August 18,

2012.

On August 10, 2012, Plaintiff was treated by his physician, and his physician wrote a "Work

Excuse" that stated, in part:

> NATE CUNDIFF was seen in our office at Lenawee Adult &
> Pediatric Medicine on 08/10/12.
>
> He is excused from work from 08/03/2012 to 08/14/2012.
>
> He may not return to work yet.  We will decide at the time of next
> appointment.
>
> He is unable to work for the days excused as mentioned above.

Plaintiff delivered the Work Excuse to Defendant by placing it in Defendant's Human Resources

Drop-Box ("Drop Box") on Sunday, August 12, 2012.[1]  The Drop Box is maintained by Defendant

so that its employees can put documents in it that are to be delivered to Defendant's management.

The UAW did not arbitrate Plaintiff's discharge under the grievance and arbitration

procedure permitted pursuant to the Union Contract.  Plaintiff filed a two-count complaint in this

Court, wherein he alleged Defendant violated the FMLA and the Bullard-Plawecki Employee Right

to Know Act.  The Court retained jurisdiction of Plaintiff's FMLA claim but declined supplemental

jurisdiction over Plaintiff's claim pursuant to the Bullard-Plawecki Employee Right to Know Act.

### III.  LEGAL STANDARD

---

[1]Neither party indicates whether Plaintiff called in or attempted to come in to work on Friday,
August 10, 2012, or on any day he was originally scheduled to come in the week of August 13,
2012 (*i.e.*, Monday-Friday, August 13, 2012-August 17, 2012) before receiving the Termination
Letter on Saturday, August 18, 2012.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient

5

[to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

This is a simple termination case that Plaintiff has tried to transform into an FMLA action. The relevant undisputed facts are:

1.  The Union Contract expressly provides that if an employee fails to call in his absence for three consecutive days, he will be terminated and lose all seniority. *See* Article 31, Section 4 (Unexcused Absences - Part (h), *i.e.*, the no-call no-show rule).

2.  For three consecutive days (August 7, 2012, August 8, 2012, and August 9, 2012), Plaintiff failed to call in his absence.

3.  Prior to August 12, 2012, Plaintiff did not communicate to Defendant, in any manner, the reason for any absences in August 2012. Instead, (a) when Plaintiff called in his absences on August 3, 2012 and August 6, 2012, he indicated only that he was taking P.A.A. time–and he did not give a reason, even when the call-in operator asked for the reason on August 6, 2012; and (b) Plaintiff did not call in or otherwise notify Defendant that he would be absent on August 7, 8 and 9, 2012.

4.  On August 10, 2012, citing the express terms of the Union Contract, Defendant terminated Plaintiff for failure to call in his absence for three consecutive days (*i.e.*, violating the no-call, no-show rule), as evidenced by the Termination Letter. *See* Article 31, Section 4 (Unexcused Absences - Part (h)).

For the reasons set forth above, there can be no genuine dispute of material fact as to Defendant's basis for terminating Plaintiff on August 10, 2012; Plaintiff was fired because he violated Defendant's no-call no-show rule, as Defendant had a right to do pursuant to the express terms of the Union Contract. Accordingly, the Court finds, as a matter of law, that Defendant lawfully terminated Plaintiff on August 10, 2012, pursuant to the provisions of the Union Contract, for an explicit violation of the terms and conditions of his employment.

The Court briefly addresses Plaintiff's argument that the August 10, 2012, Work Excuse that

Plaintiff put in the Drop Box on August 12, 2012, triggered a duty by Defendant under the FMLA to inquire further as to the basis of Plaintiff's request for leave.  Plaintiff also argues that Defendant's FMLA practice was: (1) to accept a physician's "Work Excuse" initially, (2) then to provide the employee (or his physician) with a claim form for the physician to complete for a medical leave, and (3) ultimately, to approve the FMLA leave.  Plaintiff submitted evidence that Defendant handled Plaintiff's multi-day absence in May 2012 pursuant to that practice, such that Plaintiff was approved for FMLA leave for his May 2012 absences.

Plaintiff's arguments ignore the critical facts of this case–and applicable law.  First, Plaintiff did not comply with Defendant's no-call no-show rule, and he was fired for his violation of that rule.  Second, Plaintiff: (a) took P.A.A. leave without indicating the reason(s) for taking such leave, (b) failed to call the Call-In Line to report his absence on August 7, 2012, August 8, 2012, and August 9, 2012, and (c) did not otherwise notify Defendant of any medical reason for those five absences until August 12, 2012.  In other words, there is no evidence that Defendant could have had any knowledge Plaintiff was absent for medical reasons until August 12, 2012.  Thus, when Defendant made its decision to terminate Plaintiff on August 10, 2012, there was nothing for Defendant to have an FMLA duty to "further inquire about."  Moreover, by the time Plaintiff gave Defendant the Work Excuse on August 12, 2012, Plaintiff was no longer employed by Defendant.

Third, whether Defendant had retroactively granted FMLA leave for absences in the past is irrelevant in this case because Plaintiff has not offered any evidence that FMLA leave was granted to an employee who failed to call-in his absences or otherwise notify Defendant of the reason for his absence.  In fact, at his deposition, Plaintiff stated that when Defendant retroactively granted FMLA leave for his absences in May 2012, Plaintiff had dropped his Work Excuse in the Drop Box

"during his absence" (Plaintiff does not argue or provide any evidence that he also did not call in his absences in May 2012). With respect to the absences that led to his termination and this lawsuit, however, Plaintiff had been terminated for violation of the terms and conditions of his employment, as defined in the Union Contract, before he dropped his Work Excuse in the Drop Box. Thus, his "notice" of an FMLA-related serious health condition was too late or, as another court in this district has held, not given "as soon as practicable." *See Henegar v. Daimler-Chrysler Corp.*, 280 F.Supp.2d 680, 687 (E.D. Mich. 2003) (Borman, J.) (where an employee did not give notice of his serious health condition "as soon as practicable," the employee's FMLA action was not viable as a matter of law, even though the employee chose "ill" when calling in his absence).

For the reasons stated above, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's FMLA claim.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, the Court GRANTS Defendant's Motion for Summary Judgment (Docket #19), and Plaintiff's cause of action is DISMISSED WITH PREJUDICE. Judgment shall be entered accordingly.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: April 9, 2014